UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DISA INDUSTRIES A/S,

      Plaintiff,

v.                                          Case No. 07-C-949

THYSSENKRUPP WAUPACA, INC.,

      Defendant.

**DECISION AND ORDER**

Presently pending are two motions relating to an alleged prior art device known as model 2130, a vertical molding machine employing simultaneous movement of the swing arm and ram. Defendant Thyssenkrupp Waupaca, Inc. ("Waupaca") believes the 2130 is prior art that DISA Industries A/S ("DISA") failed to disclose to the PTO during the prosecution of the '8,488 patent at issue in this case. Accordingly, it wishes to amend its pleadings to add a defense of inequitable conduct. It also seeks to amend its expert report to discard a previous defense and add an argument based on invalidity. In addition, Waupaca has filed a third motion in which it seeks summary judgment on DISA's '1,488 patent relating to the same device on the ground that it is invalid for indefiniteness. All three of Waupaca's motions will be granted.

**I. Motion to Amend the Answer**

Waupaca's motion to amend is based on its recent discovery that DISA had previously manufactured and sold a molding machine with simultaneous movement of the swing arm and ram, a feature Waupaca believes was key to the perceived novelty of the '8,488 patent. Waupaca recognizes that inequitable conduct claims are often disfavored and seen as abusive, but it protests

that it did not learn of the prior art device until its Rule 30(b)(6) deposition in December 2008. Moreover, it argues that it sought information relevant to prior art in a May 2008 production request, and thus DISA should have provided the information about model 2130 much sooner. Accordingly, Waupaca's inequitable conduct claim is a legitimate one based on the evidence that unfolded in discovery rather than a knee-jerk pleading gimmick designed to gain leverage.

DISA, of course, opposes the motion. The essence of its argument is that Waupaca's initial confidence about its litigation position caused it to sit on its heels and undertake very little discovery. Then, as the discovery cutoff fast approached (and after an adverse *Markman* ruling) it decided to change tacks and pursue an inequitable conduct claim. Waupaca should not be rewarded, DISA argues, for its unsuccessful litigation strategy and misplaced confidence. DISA also argues that the model 2130 machine is not prior art, and thus any attempt to add an inequitable conduct claim at this point would be futile.

Waupaca protests that its original document request (May 2008) sought information about prior art, and thus the information DISA disclosed much later should have been disclosed long before December. If DISA believes the machine is *not* prior art, Waupaca asks, then why did it disclose information about the 2130 in December if it was not responsive to Waupaca's original request? Since the material was provided late, Waupaca should be given an opportunity to amend its answer and explore the issue of inequitable conduct.

The key issue, of course, is whether the model 2130 was material prior art that should have been disclosed to the PTO. Naturally, the merits of a proposed amendment are important to the consideration of whether to allow that amendment, but consideration of a proposed amendment is typically not the proper forum to determine the matter conclusively. After all, the purpose of the

2

amendment is to plead a claim, not *prove* a claim. When a party offers a *bona fide* reason for seeking the amendment, and when the proposed claim is not clearly futile, a court should usually have a particularly good reason for disallowing the amendment.

I am satisfied that the amendment should be allowed. First, I do not find any indication that Waupaca engaged in some sort of deliberate strategy to spring an inequitable conduct defense upon DISA at the eleventh hour. By all accounts the information about the 2130 machine arose only in December, and so Waupaca had no inkling that any kind of inequitable conduct defense might have been viable. DISA is probably correct that more targeted document requests could have elicited this information sooner, but then again DISA only *found* some of the key documents in December, which means a better discovery plan on Waupaca's part would not have mattered. In short, neither side has displayed a picture-perfect approach to discovery, and I am satisfied that substantial prejudice will not result from the amendment. Moreover, much of DISA's objection is premised on its argument that the 2130 is not prior art. By so arguing at this stage, DISA has shown that it is capable of advancing that key argument without substantial additional discovery or delay. Accordingly, the motion to amend will be granted.

**II. Motion to Amend Expert Report**

Waupaca's motion to amend its expert report involves similar considerations. Waupaca alleges that its expert was denied access to certain key documents until after he filed his initial report in November. These documents, which involve the model 2130 machine, were discovered by DISA in December in the files of a former employee. Waupaca alleges that the documents reveal the existence of prior art (the 2130 machine) that would have rendered the '8,488 patent obvious and thus invalid under 35 U.S.C. § 103. Because its expert lacked access to these documents, his expert report should be allowed to be amended to incorporate an obviousness argument.

3

DISA again argues that Waupaca was dilatory in its discovery practices. It was not until a December 30(b)(6) deposition that Waupaca asked about the model 2130 machine, and thus its expert should not be allowed another crack at establishing invalidity. But regardless of whether Waupaca "slumbered" or not during discovery, the fact remains that DISA did not even find the documents at issue here until December – *after* the expert report date. Thus, even had Waupaca been perfectly diligent and drafted more specific requests for production (e.g., requesting documents about devices using overlapping movement), there is no indication that these documents would have been produced within the requisite time period. DISA chides Waupaca for failing to use the documents in its examination of DISA's corporate representative, but the documents were produced only days earlier and were all in Danish. Regardless, the relief Waupaca now seeks is different: it merely wants the ability to have its expert incorporate the documents into an amended report. Although I am cognizant of DISA's objection that the 2130 machine is not prior art, that is the very issue that Waupaca and its expert want to explain to this court. Accordingly, the motion to amend the expert report will also be granted.

**III. Motion for Summary Judgment**

Finally, Waupaca has filed a motion for summary judgment asserting the invalidity of the '1,488 patent. Echoing its argument from the *Markman* stage, Waupaca asserts that the patent is invalid for indefiniteness under § 112, ¶ 2. The second paragraph of 35 U.S.C. § 112 requires that the specification of every patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Personalized Media Commc'ns, LLC v.*

4

*Int'l Trade Comm'n,* 161 F.3d 696, 705 (Fed. Cir.1998). "This requirement serves a public notice function, ensuring that the patent specification adequately notifies the public of the scope of the patentee's right to exclude." *Praxair, Inc. v. ATMI, Inc.,* 543 F.3d 1306, 1319 (Fed. Cir. 2008). A claim satisfies the definiteness requirement of § 112 "[i]f one skilled in the art would understand the bounds of the claim when read in light of the specification." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir.2001).

This Court construed the "guiding means" in its *Markman* decision. The guiding means is comprised of auxiliary guide column 9 and fixed part 12. (Dkt. # 47 at 6-7.) Both sides agreed with that definition. The rub comes from the language employed at the end of claim 1: "**said guiding means being closer to said pull yoke when said squeeze chamber is in the compaction configuration than when said squeeze chamber is in the extraction configuration**." It is clear enough that the guiding means is *not* closer to the pull yoke when it's in the compaction position, and DISA implicitly concedes this in its brief. This Court stated as much in its *Markman* decision:

> Waupaca argues that although fixed part 12 is indeed closer to the pull yoke when in the compaction position, neither the auxiliary guide column 9 nor the guide 8 are closer to the pull yoke. Guide column 9 (which both sides agree is part of the guiding means) goes through the pull yoke, and as such it is not "closer" to the yoke just as a train passing through a tunnel is not "closer" to the tunnel at one end versus the other end.

(Dkt. # 47 at 6.)

Although DISA admits that the *entire* guiding means does not move closer to the pull yoke, DISA's argument is that one skilled in the art would recognize that the claim only directs that a *portion* of the guiding means (fixed part 12) should be closer to the pull yoke when in the compaction position. That is, even though the claim uses the term "said guiding means," it really

5

is only referring to *part* of the guiding means. DISA's argument is based on the opinion of Professor Henry Stoll, who testified at the *Markman* hearing. He explains his opinion as follows:

> One of ordinary skill in the art also would recognize that the essence of the guiding means in Claim 1 is the connection point between auxiliary guide column 9 and fixed part 12. It is this connection point through which the perpendicular loads are directly transmitted from the pull yoke 6 into the machine foundation, providing a rigid non-deformable support, during compaction. Thus, one of ordinary skill in the art understands that Claim 1, when read in the context of the patent specification, teaches, suggests, and discloses that the essence of the guiding means, i.e., the connection point between fixed part 12 and auxiliary guide column 9, are closer to the pull yoke 6 during compaction than extraction.

(Stoll Decl., Dkt. # 58, Ex. B. at ¶ 9.)

In other words, although the guide column 9 does not change its position relative to the pull yoke, one skilled in the art would recognize that and would assume that it is only the "connection point" between fixed part 12 and guide column 9 that moves. Accordingly, the claim is not insolubly ambiguous because one skilled in the art would recognize what the claim really meant to say. In response, Waupaca's argument is quite simple. The guiding means includes guide column 9. That column does not move closer to the pull yoke during compaction. Therefore, the claim is invalid for indefiniteness because it says the guiding means *does* move closer to the pull yoke.

The guiding means is a means-plus-function term, and this Court construed it as such in its *Markman* decision. Claims reliant on such language can be invalid for indefiniteness if they fail to disclose adequate structure.

> [I]f one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language. If an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112.

*In Re Donaldson Co.,* 16 F.3d 1189, 1195 (Fed.Cir.1994) (en banc). However, in construing the language, I found that the specification *did* disclose adequate structure, namely, guide column 9 and

6

fixed part 12. Accordingly, if the claim is indefinite, it is not for failing to disclose an adequate structure.

Similarly, in construing the term, I did not find the relevant language particularly ambiguous. In fact, the inclusion of the guide column 9 in the definition of the "guiding means" was conceded by both parties, and in fact no one presently disputes that this part of the guiding means does *not* move closer to the pull yoke when in the compaction position. Accordingly, having already construed the term without terrible difficulty, I would be hard-pressed to now conclude that the claim is somehow ambiguous or indefinite, at least in the traditional sense. *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.,* 359 F.3d 1367, 1371 (Fed. Cir. 2004) ("We have held that a claim is not indefinite merely because it poses a difficult issue of claim construction; if the claim is subject to construction, i.e., it is not insolubly ambiguous, it is not invalid for indefiniteness.")

It is clear, then, that the "guiding means" is not "ambiguous" at all because everyone essentially agrees on its structure. Even so, that does not end the indefiniteness inquiry under § 112, ¶ 2. To recall, Waupaca's argument is really not that the claim is ambiguous, it is simply that the guiding means – as both sides understand it – simply does not do what the claim says it does. It is thus not so much that the claim is "indefinite" – it is that the claim language is *inconsistent* because it teaches something that the guiding means, as defined in the specification, cannot physically do.

Although this case does not involve ambiguity in the traditional sense, it is clear that a claim can be found invalid for indefiniteness when the claims teach something inconsistent with the specification. *See Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.,* 222 F. Supp.2d 423, 564 (S.D.N.Y. 2002) ("a claim that is inconsistent with the specification may make the claim take on an unreasonable degree of uncertainty.") As the Board of Patent Appeals has phrased it, "a claim

7

also runs afoul of § 112, ¶ 2 when it is inherently inconsistent with what is described in the specification." *Ex Parte Craig S. Gittleman, et al.,* 2008 WL 696137, *4 (Bd. Pat. App. & Interf. 2009). For example, in *In re Cohn,* the court was flummoxed by the inventor's inconsistent terminology and his explanation for how certain metals should be finished:

> It is evident to us from the above summary of the description, definitions and examples appearing in appellant's specification, that the claims on appeal are inherently inconsistent. <u>As used and defined in the specification, and unmodified by other terminology, an 'opaque finish' is a flat-appearing finish which is not obtained when an alkali metal silicate is used as a sealant. Indeed, the latter sealant is said to produce a glazed or porcelain-like finish having a white coloring. The claims, on the other hand, specifically call for sealing the oxide surface with an alkali silicate in order to ultimately obtain an 'opaque appearance.'</u> No claim may be read apart from and independent of the supporting disclosure on which it is based. We are thus required to read the claims in light of the disclosure and in that light the term 'opaque finish' as it appears in the preamble of each claim must take on the meaning ascribed to it in that disclosure. The result is an inexplicable inconsistency within each claim requiring that the rejection under 35 U.S.C. 112 on grounds of indefiniteness be sustained.

*Application of Cohn,* 438 F.2d 989, 993 (Cust. & Pat. App. 1971) (emphasis added).

In *Cohn*, the inventor said one thing in the specification, but said something contradictory in the claims. That, in essence, is what's happened here. The "guiding means" structure is found in the specification, but in the claim it attempts to do something (move closer to the pull yoke) that is inconsistent with how the guiding means is defined. In short, an entire component of the guiding means cannot do what the claim says it does.

Another way of putting it is that a claim will be found invalid for indefiniteness when the claim sets forth something other than what the applicant regards as his invention. For instance, in *Allen Engineering Corp. v. Bartell Industries, Inc.*, the specification taught that a gearbox "*cannot* pivot in a plane perpendicular to the biaxial plane." 299 F.3d 1336, 1349 (Fed. Cir. 2002). Yet the

8

claims limited the box to pivoting "*only* in a plane perpendicular to said biaxial plane." Obviously, the claims were inconsistent with the specification, and the court found the claims indefinite on that basis:

> Here, it is apparent from a simple comparison of the claims with the specification that the inventor did not regard a trowel in which the second gear box pivoted only in a plane perpendicular to the biaxial plane to be his invention. Allen admits as much. Accordingly, we conclude as a matter of law that claims 1-4 and 13, which include the incorrect "perpendicular" limitation, are invalid under § 112, paragraph 2.

*Id.*

Importantly, in *Allen* and *Cohn* it was not as though the terms were "ambiguous" or unable to be defined – it was simply that the claims of the patent disclosed something contradictory to what was disclosed in the specification. That is what we have here. The inventor (DISA) has admitted that the guiding means does not actually move closer to the pull yoke, because that is impossible. Instead, it asserts that what the claim really meant to say was that "*part* of the guiding means" moves closer to the pull yoke. Although Dr. Stoll may indeed represent the opinion of one skilled in the art, his opinion would only be relevant to construing the claim term itself, for example, if it were ambiguous in the traditional sense. DISA has pointed to no authority that would allow an expert to override the clear claim language once the term has already been construed and when, as here, there is a clear inconsistency between the claim and the specification. Here the problem is not definitional and thus it does not lend itself to expert advice. Dr. Stoll's opinion is that "guiding means" means one thing in the specification and in part of the claim itself, but then it means another thing altogether (he excludes the guide column) in the last sentence of claim 1. That is not the proper purpose of expert testimony.

9

In fact, what Dr. Stoll's opinions really show is what the patent claims *should* have said. They present an argument for changing the definition of "guiding means," specifically, ignoring one component of the guiding means and focusing on another. Alternatively, they suggest that the drafter should have written that fixed part 12 moves closer to the pull yoke rather than stating that the entire guiding means does. One skilled in the art may in fact understand these things in exactly the fashion Dr. Stoll states, but such an understanding would only entitle one to conclude that there was a drafting error or some other mistake. It would not entitle a person to rewrite or ignore the claim language altogether. In short, while Dr. Stoll's expertise would be helpful in construing an ambiguous term, he is unable to assist DISA's case when the term is used inconsistently throughout the patent.

Accordingly, I conclude that the "guiding means," as described in claim 1, is inconsistent with the definition of guiding means derived from the specification. Therefore, the claim is invalid for indefiniteness under § 112, ¶ 2. Waupaca's motion for summary judgment is **GRANTED**. The motion to amend the answer and the motion to amend the expert report are also **GRANTED**. The motions to seal are **GRANTED**; the protective order allows the documents to be sealed, and thus no further motions to seal are required.

**SO ORDERED** this   7th   day of April, 2009.

   s/ William C. Griesbach  
William C. Griesbach  
United States District Judge

10